## DUTY'S ESTATE, Appellant,

v.

## Don ADCOCK, Appellee.

### No. 5339.

Court of Civil Appeals of Texas, Waco.

Oct. 10, 1974.

Haley, Fulbright, Winniford & Bice, John W. Fulbright, Waco, for appellant.

Henry Stollenwerck, Dallas, for appellee.

HALL, Justice.

This suit was brought for the recovery of damages suffered by plaintiff-appellee when his truck-tractor which he was driving collided with an automobile driven by David Duty. Duty was killed upon impact. Trial was to a jury which found that the collision was proximately caused by Duty's negligence in several particulars and set plaintiff's damages at $17,400.00. Judgment was rendered on the verdict for plaintiff. We reverse and remand.

No inquiries were made of the jury regarding the plaintiff's alleged negligent conduct at the time of the collision. Defensive special issues were duly requested which would have asked the jury whether plaintiff negligently failed to keep a lookout, and, if he did, whether this negligence was a proximate cause. These issues were refused by the trial court. A major question in the case is whether the failure to submit these requested issues to the jury was error.

■ Without dispute the requested lookout issues were properly pleaded. Whether pleaded ultimate issues should be submitted to a jury raises a question of "no evidence". Baumler v. Hazelwood, 162 Tex. 361, 347 S.W.2d 560, 563. Thus, if the pleaded lookout issues were supported by any probative evidence, they should have gone to the jury. Rule 279, Vernon's Texas Rules Civil Procedure. A correct resolution of the question requires us to reject all evidence which tends to show that

plaintiff kept a proper lookout, and consider only the evidence which shows that he did not do so. Viewed in this light, the photographs and testimony in evidence supports a showing of the following circumstances:

Shortly before the collision, plaintiff was traveling south across a bridge which overpasses Interstate Highway 35. A panoramic view of all of the area and vehicles in question was open to one in plaintiff's position. Duty was traveling north toward the bridge. Plaintiff was traveling 40 miles per hour. Duty was traveling 45 miles per hour. The overall length of plaintiff's tractor and trailer was 54½ feet. The total weight of tractor, trailer and load was 65,000 pounds. The tractor was eight feet wide. The place of collision was 60 feet south of the bridge. At the time of collision the left side of plaintiff's tractor was very close to the center stripe in the roadway. The part of plaintiff's tractor receiving greatest impact was the left one-half of the bottom one-third of its front end.

The half of the roadway upon which plaintiff was driving as he crossed and left the bridge was 18 feet wide. As he crossed the bridge, plaintiff, and a vehicle in front of him in his lane of travel, intended to turn left onto another roadway at a point 220 feet south of the bridge. At this time, Duty was approaching this point of plaintiff's intended turn-off from the south. To negotiate the turn-off would require plaintiff, and the vehicle in front of him, to cross Duty's lane of travel. As Duty neared the turn-off, the driver in front of plaintiff turned left at the turn-off directly in front of Duty. Duty veered to his left and into plaintiff's lane, thereby avoiding collision with the left-turning automobile. The collision between plaintiff and Duty resulted. Plaintiff "didn't pay any particular attention" to the car in front of him which turned in front of Duty, and did not feel there was any reason to do so, "until David Duty pulled out there." He doesn't know whether the third driver "turned short" or not in front of Duty. At one time in his testimony, plaintiff estimated that Duty was 100 feet from plaintiff when "he pulled over into my lane"; at another time he estimated that Duty was 500 feet from him "when I seen it all taking place"; and at another he answered "No" to the question, "Well, had you seen David before the car turned in front of him and before he got out in your lane?" Plaintiff had his "full brakes on" at the time of impact but his truck continued another twelve feet after impact. And, although plaintiff testified that he was traveling straight ahead when the collision occurred, photographs in evidence show his tractor turning to its left toward the middle of the roadway.

The evidence we have recited indicates that plaintiff did not see Duty until moments before the collision and that he reacted by slamming his brakes. It is legally sufficient to support findings that if plaintiff had exercised ordinary care he would have seen Duty in time to have avoided the collision by turning his tractor to the right. Accordingly, defendants' requested issues on lookout and proximate cause should have been submitted to the jury.

The other problems raised by defendants —asserted defects of pleading and parties—are not likely to recur on retrial, and we need not discuss them.

The judgment is reversed and this cause is remanded for another trial. This order of reversal renders plaintiff's crosspoint, in which he seeks a reformation of the judgment, immaterial.

Reversed and remanded.